**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SERGIO P.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>*Defendant*. | Case No. 24-cv-02182<br><br>Hon. Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Sergio P.'s[1] applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). This case was assigned to the Hon. Beth W. Jantz in accordance with Local Rule 73.1(c). (Dkt. 6.) For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. 10) is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 12) is GRANTED. The Court affirms the Commissioner's final decision.

## BACKGROUND

Plaintiff Sergio P. filed applications for SSDI under Title II and for SSI under Title XVI on November 30, 2021, alleging disability beginning September 1, 2020. (R. 186–87.) The claims were denied initially on July 26, 2022, and upon reconsideration on October 6, 2022. (*Id.* at 194, 199, 205, 210.)

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

At Plaintiff's request, Administrative Law Judge Carla Suffi held a telephonic hearing on June 14, 2023, at which Plaintiff, counsel, and a vocational expert appeared. (R. 84–133, 269.) Plaintiff testified to difficulty reaching in front and overhead due to back pain, an ability to stand for approximately five minutes at a time, use of a cane, right foot drop, and the need to change positions after sitting for two to three hours. (*Id.* at 105–06, 116, 118–19, 124–25.) After the ALJ provided a series of hypothetical residual functional capacities ("RFC"), the vocational expert testified that an individual with such an RFC could not perform Plaintiff's past work as an order picker and community organizer (*id.* at 128), but could perform duties of an account clerk, order clerk, and information clerk (*id.* at 129). The vocational expert further testified that such positions would permit off-task time of up to 15 percent of the workday and 1.5 absences per month. (*Id.* at 130–31.) Following the hearing, the ALJ ultimately issued an unfavorable decision as to Plaintiff's claim on August 18, 2023. (*Id.* at 65–78.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 70.) Also at this step, the ALJ noted that Plaintiff had earned unreported income after the onset date, but the work did not constitute disqualifying substantial gainful activity as "there are sufficiently independent reasons for a finding that the claimant has not been under a disability . . . that do not require a denial at this step." (*Id.* at 70–71.) At step two, the ALJ found severe impairments of obesity; degenerative disc disease of the lumbar spine with herniation and stenosis, status post surgeries in 1997, 2003, and 2017, and a 2018 fusion, with right lower extremity radiculopathy and foot drop; status post open reduction internal fixation right ankle surgery in May 2018; and degenerative joint disease in the left knee status post 2016 surgery. (*Id.* at 71.) At step three, the ALJ found that no impairment met or medically equaled a listed impairment, including Listings 1.15 and 1.18. (*Id.* at 71–72.) The ALJ further determined that

Plaintiff had the RFC to perform sedentary work with the following additional limitations: occasional balancing, stooping, kneeling, crawling, and climbing ramps/stairs; never crouching or climbing ladders, ropes, or scaffolds; requiring a cane for ambulation; never operating right lower-extremity foot controls; avoiding extraordinary hazards such as unprotected heights, grossly uneven surfaces, and dangerous, unguarded moving mechanical parts; and requiring a sit/stand option of sitting 120 minutes at a time followed by 5 to 10 minutes standing before resuming sitting. (*Id.* at 72–76.) At step four, the ALJ found that Plaintiff could not perform his past relevant work as an order picker and community organizer. (*Id.* at 76.) At step five, relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform certain sedentary, unskilled occupations such as account clerk, order clerk, and information clerk, and therefore was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 76–78.)

The Appeals Council denied review on January 17, 2024, rendering the ALJ's decision the Commissioner's final decision. (R. 1–4.) Plaintiff commenced this action under 42 U.S.C. § 405(g), and the matter is now before this Court for judicial review. (*See generally* Dkt. 1.)

## DISCUSSION

### I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary

conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II. The ALJ's Decision Was Supported by Substantial Evidence

Plaintiff raises two challenges to the ALJ's decision. Plaintiff contends that the ALJ erred by: (1) not explaining how she formulated the specific limitations contained in the RFC; and (2) failing to properly consider Plaintiff's subjective complaints of pain. (*See* Dkt. 11 at 9, 11.) As discussed below, because the ALJ's decision was supported by substantial evidence, the Court affirms the Commissioner's decision. *See Warnell*, 97 F.4th at 1052 ("We affirm an ALJ's decision denying disability benefits so long as it is supported by substantial evidence.").

### A. The ALJ's Residual Functional Capacity Assessment

Plaintiff's principal argument is that the ALJ failed to build a logical bridge by formulating an RFC that did not correspond to any medical opinion in the record. (Dkt. 11 at 9–10.) Plaintiff contends that, because the ALJ found the state agency physicians' opinions only "partially persuasive," the ALJ impermissibly "played doctor" by crafting her own functional capacity assessment without relying on a supporting medical opinion. (*Id.*) The Court disagrees.

An ALJ must consider the medical opinion evidence, but the RFC determination is reserved to the ALJ. *See* 20 C.F.R. §§ 416.920c(a), 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not

a treating or examining doctor – to decide."). The ALJ is not required to rely on a particular physician's opinion or choose between competing medical opinions when assessing functional capacity. *See Whitehead v. Saul*, 841 F. App'x 976, 982–83 (7th Cir. 2020) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). Nor is there error where no physician in the record assessed *greater* limitations than those adopted by the ALJ. *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." (citation omitted)).

The ALJ's decision reflects that she considered the medical opinion evidence and then assessed additional restrictions based on the record as a whole. Dr. Reynaldo Gotanco and Dr. James LaFata both opined that Plaintiff could perform light exertional work with occasional postural limitations. (R. 76, 166–167, 175–176.) The ALJ found those opinions partially persuasive but concluded that the hearing-level evidence supported greater restrictions. (*Id.* at 76 ("[N]o reviewing, examining, or testifying medical expert opined that the claimant had greater, work-preclusive limitations. However, the evidence available at the hearing level supported greater limitations, as defined in the foregoing functional capacity assessment.").) Accordingly, the ALJ limited Plaintiff to sedentary work rather than light work, and included limitations such as a sit-stand option, the use of a cane for ambulation, and prohibiting the use of the right lower extremity for foot controls. (*Id.* at 72, 76.) The resulting RFC was therefore *more* restrictive than any physician's opinion.

And the fact that these additional limitations were not assessed by a physician does not establish reversible error. The ALJ did not reject all medical opinions and independently construct an unsupported middle ground; rather, she adopted limitations ***more*** restrictive than those recommended by the medical experts. *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There

is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Plaintiff has not shown that the inclusion of those ***additional*** restrictions was impermissible or unsupported by the record.[2] *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding that it was "[a] fundamental problem [that the claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set").

Indeed, the source of those added limitations is apparent from the decision. The ALJ noted Plaintiff's testimony that he had right foot drop, trouble lifting due to knee pain, needed a cane, and could sit for only about two or three hours before needing to stand. (R. 73.) The ALJ was not required to credit those allegations *a priori*, but she nonetheless credited them in part by including corresponding limitations in the RFC. (*Id.* at 72, 76); *cf. Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (noting that the ALJ was not "required to credit [the claimant's] testimony," though the ALJ should have considered it and determined whether it was credible). That explanation satisfied the minimal articulation requirement by connecting the additional restrictions to the evidence that the ALJ found persuasive. *See, e.g.*, *Yokosh v. Bisignano*, 170 F.4th 631, 639 (7th Cir. 2026).

The ALJ also considered Plaintiff's treatment history and the consultative examination findings, which supported the RFC assessment. In July 2022, consultative examiner Dr. Liana Palacci observed that Plaintiff could walk more than fifty feet without an assistive device, had no

[2] The six cases that Plaintiff cites for the proposition that an ALJ may not substitute her own judgment for medical opinion evidence are distinguishable. (Dkt. 11 at 10.) In those cases, the ALJ rejected medical opinions and formulated an RFC *less* restrictive than the limitations supported by those medical opinions. (*See id.*) That is not what happened here. The ALJ adopted limitations *more* restrictive than those recommended by the medical experts. Plaintiff's cited cases are therefore inapposite.

difficulty getting on and off the examination table, squatting, rising, or walking on his heels or toes, and displayed normal range of motion in his upper extremities with full arm strength and normal fine and gross manipulation. (R. 73, 542–543.) Dr. Palacci also noted that Plaintiff could sit, stand, lift, carry, and handle objects without issue. (*Id.*) These examination results, which documented Plaintiff's functionality despite his ongoing complaints, supported the ALJ's assessment. The same is true of Plaintiff's physical therapy records, which further support the ALJ's determination and are discussed in more detail below. *See infra* Section II.B.

Substantial evidence therefore supports the ALJ's RFC determination. *See Warnell*, 97 F.4th at 1052–53. The ALJ articulated how she considered the medical opinions and hearing-level evidence, explained why she adopted limitations more restrictive than any physician assessed, and connected those limitations to Plaintiff's testimony, treatment history, and the objective medical findings. (R. 72–76.) The decision satisfied the applicable articulation requirement and built the required logical bridge between the evidence and the result. *See Scrogham*, 765 F.3d at 695.

**B. The ALJ's Evaluation of Plaintiff's Subjective Complaints**

Plaintiff next argues that the ALJ failed to properly consider his subjective complaints of pain, particularly his testimony that reaching in front of him and overhead caused back pain. (*See* Dkt. 11 at 11.) Plaintiff contends that this error was harmful because the vocational expert testified that a limitation to occasional reaching would preclude sedentary work. (*Id.* at 14.) The Court disagrees because, as discussed below, the ALJ acknowledged Plaintiff's reaching complaints and gave record-supported reasons for declining to include a reaching limitation in the RFC.

When evaluating a plaintiff's reports of symptoms, an ALJ may consider the objective medical evidence, daily activities, the intensity of pain and other symptoms, precipitating and aggravating factors, medications and their effectiveness, treatment received, and other measures used

to relieve symptoms. *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). The Court will overturn an ALJ's evaluation of Plaintiff's subjective statements only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Furthermore, while an ALJ must give "specific reasons supported by the record," "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper v. Colvin*, 712 F.3d 351, 362, 367 (7th Cir. 2013) (citations omitted). And, as the Seventh Circuit has emphasized, ALJs are subject to "only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053.

The ALJ did not ignore the line of evidence that Plaintiff cites. She acknowledged Plaintiff's report that his impairments affected, among other things, "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, concentration, and completing tasks." (R. 72–73, 359–366.) The ALJ also addressed Plaintiff's testimony, (*id.* at 125), about his symptoms. (*Id.* at 76 ("The claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not fully consistent with the medical evidence and other evidence in the record. The evidence supports that the claimant's impairments reasonably limit him to less than the full range of sedentary exertional level work as defined in the foregoing functional capacity assessment.").) Rather than disregarding Plaintiff's allegations, the ALJ considered them and, as discussed above, found that his statements concerning the intensity, persistence, and limiting effects of his symptoms "supported greater . . . limitations" in the RFC than those reflected in the medical opinion evidence. (*Id.*)

Substantial evidence supported the ALJ's RFC assessment. The July 2022 consultative examination showed normal range of motion in Plaintiff's shoulders, elbows, and wrists; normal bilateral upper extremity strength; normal bilateral grip strength; and normal fine and gross manipulation. (R. 73, 542.) Dr. Palacci further noted that Plaintiff retained the capacity to handle

objects, lift, and carry. (*Id.* at 73, 543.) Likewise, neither state agency reviewing physician opined that Plaintiff had any manipulative limitations, including reaching restrictions. (*Id.* at 166–67, 176.) Plaintiff points to physical therapy records showing that he had not met certain therapy goals, including demonstrating proper mechanics to lift and place objects at shoulder level. (Dkt. 11 at 5–6; R. 608, 627–628.) But these records identify treatment goals; they do not compel a finding that Plaintiff was limited to occasional reaching or otherwise unable to perform sedentary work. *See Pamela J. v. Kijakazi*, No. 22 C 0812, 2022 U.S. Dist. LEXIS 191561, at *21 (N.D. Ill. Oct. 20, 2022) ("An impairment is not necessarily disabling; diagnosis is not disability. . . . What matters is the severity of the condition and how it limits plaintiff's capacity to work based on clinical and/or laboratory findings." (citations omitted)).

The ALJ also reasonably considered Plaintiff's treatment history and activities in evaluating his subjective complaints. When Plaintiff contacted his physician for back pain medication in September 2021, he had not been seen since 2018 (R. 74, 489), and when Plaintiff fell off his bike in December 2021, he reported no back pain (*id.* at 74, 484). The ALJ further noted Plaintiff's relatively conservative treatment, consisting primarily of ibuprofen, gabapentin, medical marijuana, occasional lumbar epidural steroid injections, and physical therapy. (*Id.* at 73–74); *see* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) ("Given the deference we show to an ALJ's factual determinations . . . we will not question the ALJ's finding that [the claimant's] treatment was 'relatively conservative.'" (citation omitted)). Although Plaintiff reported high pain levels during some physical therapy sessions, his therapist noted that he demonstrated "great tolerance to exercise, not requiring many rest breaks." (R. 75, 617.) The ALJ also observed that Plaintiff reported going to the gym and exercising for "'multiple hours' three days per week." (*Id.* at 75, 631.) The ALJ did not equate those activities

with an ability to perform full-time work, but instead permissibly considered them in evaluating the alleged severity of Plaintiff's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." (citations omitted)).

Overall, the ALJ gave "specific reasons supported by the record" for finding Plaintiff's subjective complaints not entirely consistent with the evidence. *Pepper*, 712 F.3d at 367. Plaintiff has identified evidence that he believes supports greater limitations, but "[i]t is not enough to criticize the ALJ's decision about [his] functional capacity to work. [He] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Plaintiff has not done so here. Because the ALJ's subjective symptom evaluation was adequately explained and supported by substantial evidence, the Court will not remand on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. 10) is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 12) is GRANTED. The Court affirms the Commissioner's final decision.

SO ORDERED.

DATED: September 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge